FILED

2012 Mar-20  AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JOHN CAMERON GRAHAM,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **4:11-cv-181-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff John Cameron Graham ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

# I. Procedural History

Plaintiff filed his application for Supplemental Security Income ("SSI") disability benefits on October 27, 2003, alleging a disability onset date of July 23, 2003, (R. 105), due to arthritis, hepatitis C, broken back and hip, leg and bone graft, broken pelvis, and chronic pain, (R. 130).  Plaintiff's disability report alleged also that he is unable to work due to "pain, stiffness, meds, no energy." (R. 118).  After the SSA denied his application in March 2004, (R. 533), Plaintiff requested a hearing and received one on April 3, 2006, *id.*

The ALJ denied Plaintiff's claim on September 19, 2006.  (R. 43).  On August 31, 2007, the Appeals Council granted Plaintiff's request for review, (R. 91), and remanded the case to the ALJ for development of the record, (R. 100-103).  The ALJ conducted a supplemental hearing on November 14, 2008, (R. 570), where Plaintiff requested a closed period of benefits from the date of his SSI application on October 27, 2003, through August 27, 2007, the date Plaintiff returned to work.[1]  (R. 16).  At the time of the hearing, Plaintiff was 41 years old, had a high school diploma, (R. 575-76), and past relevant work that included heavy and unskilled work as a contractor in the pool industry, and light and

---

[1] Plaintiff stopped working in October 2008, (R. 114), and filed subsequently an application for disability, which is currently pending, doc. 9 at 3.

semiskilled work as a chemical weigher.  (R. 28, 590).  The ALJ again denied

Plaintiff's claim on July 23, 2009, (R. 13), which became the final decision of the

Commissioner when the Appeals Council refused to grant review on November

19, 2010, (R. 5).  Plaintiff then filed this action pursuant to section 1631 of the

Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable

and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a

preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in

sequence:

> (1)    whether the claimant is currently unemployed;
>
> (2)    whether the claimant has a severe impairment;
>
> (3)    whether the impairment meets or equals one listed by the Secretary;
>
> (4)    whether the claimant is unable to perform his or her past work; and
>
> (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Plaintiff is correct that the ALJ committed reversible error.  In that regard, the court notes that, performing the five step analysis, initially, the ALJ determined that Plaintiff has not engaged in substantial gainful activity from October 27, 2003, through

August 27, 2007,[2] and therefore met Step One.  (R. 18).  Next, the ALJ

acknowledged that Plaintiff's severe impairments of "history of motorcycle

accident with multiple fractures, low back pain with radiculopathy, arthritis,

neurogenic bladder, and hepatitis C" met Step Two.  (R. 19).  The ALJ then

proceeded to the next step and found that Plaintiff did not satisfy Step Three since

he does not have "an impairment or combination of impairments that meets or

medically equals one of the listed impairments."  (R. 23).

Although the ALJ answered Step Three in the negative, consistent with the

law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he

determined that Plaintiff

> has the residual functional capacity ["RFC"] for the period October
> 27, 2003 to August 27, 2007 to perform light work which allows for a
> sit stand option, the ability to stand or walk at least two hours, the
> ability to sit at least six hours, no pushing or pulling with the lower
> extremities, and frequent handling.

(R. 23).  In light of Plaintiff's RFC, the ALJ held that Plaintiff was "unable to

perform any past relevant work for the period October 27, 2003 to August 27,

2007."  (R. 28).  Because the ALJ answered Step Four in the negative, he moved

on to Step Five where he considered Plaintiff's age, education, work experience,

and RFC, and determined that there are "jobs that exist in significant numbers in

---

[2]Plaintiff began substantial gainful activity work on August 27, 2007.  (R. 18, 577).

the national economy that [Plaintiff] could [have] perform[ed] for the period

October 27, 2003 to August 27, 2007." *Id.* As a result, the ALJ answered Step

Five in the negative, and determined that Plaintiff is not disabled. (R. 29); *see*

*also McDaniel*, 800 F.2d at 1030. For the reasons stated below, the court finds

that the ALJ's decision is supported by substantial evidence.

## V.  Analysis

The court turns now to Plaintiff's contentions that the ALJ committed

reversible error. Plaintiff alleges that the ALJ "did not adequately consider all of

Plaintiff's impairments and in combination" because he failed to (1) classify

Plaintiff's porphyria and adjustment disorder as severe impairments, doc. 9 at 7,

(2) find that Plaintiff's neurogenic bladder and hepatitis C caused additional

limitations resulting in disability, *id.* at 7-8, and (3) consider all of Plaintiff's

impairments in combination to find Plaintiff disabled, *id.* at 9. Based on its review

of the record, the court disagrees with Plaintiff that the ALJ committed reversible

error.

A.    *The ALJ did not err in finding that Plaintiff's porphyria and adjustment
      disorder were not severe impairments.*

1.    Porphyria

First, as to Plaintiff's contention that the ALJ erred by failing to find that his

porphyria, which Plaintiff testified has "been going on for about a year and a half

or two years . . . [and] steadily got worse," (R. 580), qualified as a severe

impairment, doc. 9 at 7, indeed, the ALJ found that

> [Plaintiff's] porphyria is not a severe impairment.  Although
> [Plaintiff] testified that he had experienced problems with porphyria
> for two years, Dr. Peterson reported in October 2008 that he had
> taken [Plaintiff] out of work starting on August 22, 2008 due to
> problems with porphyria and that he only needed to be out of work
> until the end of December 2008.  There is no evidence of an earlier
> diagnosis of porphyria or problems related to porphyria.  There is no
> evidence that [Plaintiff] has suffered symptoms of porphyria for any
> period of 12 continuous months.  Although [Plaintiff] complained to
> Dr. Tenchavez in August 2007 of cellulitis of the hand, he reported
> that the cellulitis was nearly gone by November 5, 2007.  There is no
> evidence that the episode of cellulitis was related to porphyria, and no
> evidence of any other skin problems until August 22, 2008.

(R. 23).  This court finds that the ALJ's decision is supported by substantial

evidence for several reasons.  First, Plaintiff fails to cite any medical evidence, and

the court found none, to support Plaintiff's contention that his porphyria is a

severe impairment.  In fact, the ALJ's finding quoted here is a complete review of

the entire evidence related to Plaintiff's porphyria.  Second, as the record makes

clear, at best, Plaintiff's porphyria lasted for a short duration – i.e., August 22,

2008, to December 31, 2008.  (R. 23).  There is nothing in the record to show any

long term issues from this condition.  See 20 C.F.R. § 404.1505(a) ("The law

defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical [ ] impairment   [ ] which has lasted or can be expected to last for a continuous period of not less than 12 months."). Because it is the Plaintiff's burden to prove disability, *see* 20 C.F.R. § 416.912(a), this court finds that Plaintiff failed to establish that the ALJ erred in finding that Plaintiff's porphyria is not a severe condition.

2.      Adjustment Disorder

Next, as to Plaintiff's contention that his adjustment disorder is a severe condition, doc. 9 at 7, the court finds that the medical evidence also refutes this contention. In that regard, the court notes that on February 11, 2004, Dr. June Nichols ("Dr. Nichols") performed a psychological evaluation and indicated that Plaintiff stated that he does not "have any income. It's hard getting used to being out of prison." (R. 306). Dr. Nichols added that Plaintiff's "remaining symptoms and problems" were that he "continues to experience difficult adjustment since his release from prison. His symptoms include anxiety and mild depression." (R. 306). Dr. Nichols described Plaintiff's sensorium and cognition as follows: clear; oriented with respect to person, place, time, and situation; adequate speed of mental processing; grossly in tact recent and remote memory function; adequate general fund of knowledge; adequate ability to interpret proverbs; no evidence of confusion, loosening of associations or tangentiality; thought content was

unremarkable for hallucinations; fair judgment and insight; and average range of intellectual ability.  (R. 308).  Regarding Plaintiff's daily activities, Plaintiff informed Dr. Nichols that he ate three meals per day, watched television, visited relatives and occasionally friends, and helped with the cooking and cleaning.  *Id*. Dr. Nichols diagnosed Plaintiff with "adjustment disorder with mixed anxiety and depressed mood" and alcohol and cannabis dependence in sustained, full remission, and assigned Plaintiff a global assessment of functioning ("GAF") score of 70, which indicates some mild difficulties regarding social, school, and work functioning.[3]  (R. 309).  Further, Dr. Nichols opined that Plaintiff's "prognosis for significant improvement in his anxiety and depression within the next 12 months is good if he continues to meet the requirements of his probation and abstain from substance abuse."  *Id*.

Based on Dr. Nichol's report, initially, on September 19, 2006, the ALJ found that Plaintiff's adjustment disorder was a severe impairment.  (R. 52). However, in finding that Plaintiff retained the RFC to perform light work, *id*., the ALJ assigned "great weight" to Dr. Nichols opinion that Plaintiff "had no more than negligible, or 'mild' mental limitations."  *Id*.  Three years later, on July 23,

---

[3]The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000), presents the Global Assessment of Functioning ("GAF") Scales, which is widely used to score the severity of psychiatric illnesses.

2009, after further development of the record, the ALJ found that Plaintiff's adjustment disorder failed to rise to a severe impairment, (R. 19), and that "Dr. Nichols's opinion is consistent with [Plaintiff's] treating medical records which indicated that he has only occasionally complained of depression and anxiety, and that no mental health treatment has been recommended," (R. 22).

Plaintiff takes issue with the ALJ's subsequent decision to reverse his earlier finding that Plaintiff's adjustment disorder constituted a severe impairment. However, again, Plaintiff cites absolutely no evidence to refute the ALJ's finding. In fact, he devoted only a single sentence to this argument: "The severe impairment of adjustment disorder found in the first ALJ decision (R. 50) was dropped on remand, also found to be a non severe impairment (R. 22) with no mental limitations for any period." Doc. 9 at 7. Moreover, it is difficult for Plaintiff to attack the ALJ when Plaintiff conceded in his August 20, 2007, memorandum to the Appeals Council that he "does not allege that his anxiety and depression are disabling other than as they relate to his chronic pain syndrome [and] is not in disagreement of the findings of psychologist Nichols." (R. 98). In light of Plaintiff's failure again to meet his burden of proving disability, the court finds that the ALJ's decision is supported by substantial evidence.

B.      *Plaintiff's neurogenic bladder and hepatitis C do not require additional restrictions to Plaintiff's RFC.*

Next, Plaintiff contends that his severe impairments of neurogenic bladder and hepatitis C "would reasonably have resulted in additional limitations" on Plaintiff's RFC.  Doc. 9 at 7.  This argument is also unpersuasive.

1.      Neurogenic bladder

Plaintiff contends that the ALJ erred by failing to further restrict Plaintiff's RFC due to his neurogenic bladder when the "ALJ clearly accepted this diagnosis made by Dr. Zaremba in April 2006."[4]  Doc. 9 at 7-8.  Apparently, Plaintiff asserts that it is clear error for the ALJ to find that Plaintiff's neurogenic bladder is a severe impairment without also finding that Plaintiff is disabled.  The problem with this assertion, among other things, is that Plaintiff failed to allege that his neurogenic bladder or the resulting symptoms were disabling in his November 6, 2003, disability report.  (R. 130).  Moreover, even ignoring Plaintiff's failure to include neurogenic bladder in 2003, the record simply does not support Plaintiff's assertion that the ALJ "accepted" Dr. Zaremba's diagnosis.  In fact, because Plaintiff's neurogenic bladder diagnosis was well developed in the record beginning in 1991, (R. 172, 179, 184, 186, 189-191, 221, 305, 473), the ALJ did

_____

[4]On September 19, 2006, the ALJ rejected Plaintiff's neurogenic bladder diagnosis as a severe impairment, (R. 52), but accepted it as a severe impairment on July 23, 2009, (R. 19).

not rely on Dr. Zaremba's 2006 diagnosis, (R. 473).

Furthermore, Dr. Zaremba's evaluation does not support Plaintiff's contention that his neurogenic bladder is disabling.  Initially, on April 20, 2006, Dr. Zaremba completed a medical evaluation and opined that Plaintiff "had difficulty with urination. [Plaintiff] has had an abnormal micturition test consistent with a neurogenic bladder secondary to his accident."  (R. 474).  Dr. Zaremba diagnosed Plaintiff with "neurogenic bladder secondary to trauma, with moderately severe symptoms," "status post motorcycle accident with multiple fractures" resulting in constant pain, osteoarthritis, hepatitis C, depression - situational secondary to pain, and obstipation/constipation.  *Id*.  Further, Dr. Zaremba found that Plaintiff can (1) reasonably lift 5 pounds, (2) sit for three to four hours and walk for one hour in an eight hour day, (3) occasionally use fine manipulation, (4) and never use gross manipulation, reach overhead, push or pull with his arms and legs, climb stairs or balance, bend, stoop, or work around hazardous machinery, dust, allergens or fumes.  (R. 476).  Significantly, Dr. Zaremba found that Plaintiff's pain was "intractable and virtually incapacitating," and required bed rest and medication.  (R. 477).

However, when the ALJ asked Dr. Zaremba to clarify his April 2006 opinion, on March 21, 2008, Dr. Zaremba responded that he based his evaluation

largely on Plaintiff's subjective complaints of pain:  "[Plaintiff's] limitations of pain are subjective report by [Plaintiff], as well as observations;" "[Plaintiff] relayed a subjective pain, particularly with hands;" "[Plaintiff] would have increasing pain, subjectively;" "[Plaintiff] avoids lifting other than minimal level because of subjective reports of pain;" "Subjectively, [Plaintiff] gives a history of requiring changing position because of his lower back pain;" and "[Plaintiff's] subjective report of increasing pain and instability with ambulatory activity would limit him significantly with regard to ambulatory activity."  (R. 115-16).  In other words, although Dr. Zaremba diagnosed Plaintiff with neurogenic bladder, Dr. Zaremba's opinion that Plaintiff has limitations is based exclusively on Plaintiff's subjective complaints of pain in his hands and back, which are not symptoms related to Plaintiff's neurogenic bladder, (R. 550).  Significantly, Dr. Zaremba's assessment that Plaintiff has "intractable and virtually incapacitating" pain was based on Plaintiff's subjective reports rather than on objective medical evidence, and, as such, was not entitled to significant weight. *See* 20 C.F.R. §§ 404.1527(d) and 416.912(b).

In addition to the problems the ALJ noted with Dr. Zaremba's findings, the ALJ found also that Plaintiff's testimony regarding his neurogenic bladder failed to demonstrate that Plaintiff is disabled.  Plaintiff testified that his neurogenic

bladder causes him to (1) "strain so hard to void," (2) "feel like you've got to go to the bathroom, you get in there, you can't go," and (3) take "ten or fifteen minutes" to void.  (R. 550).  As a result, although the ALJ found that Plaintiff had a severe impairment, the ALJ noted also that

> [Plaintiff] has not alleged that [neurogenic bladder] prevents him from working.  He did not testify to disabling limitations related to neurogenic bladder. [Plaintiff] was evaluated by a urologist, Dr. Lloyd, for this condition in 1998 [and] in 1999, and Dr. Lloyd reported that [Plaintiff] had a reasonable level of bladder function. No treating or examining physician has reported that [Plaintiff] has disabling limitations related to neurogenic bladder.

(R. 27).  The ALJ's finding is supported by substantial evidence, and, in fact, Plaintiff failed to present any evidence to refute the ALJ's opinion.  Because Plaintiff bears the burden of providing evidence to prove disability, see 20 C.F.R. § 416.912(a) and (c), the court finds that the ALJ committed no reversible error in finding that Plaintiff's neurogenic bladder is not a disabling impairment.

2.     Hepatitis C

The full extent of Plaintiff's contention regarding his hepatitis C diagnosis is that it

> might also reasonably have further restricted Plaintiff's RFC. Plaintiff testified that this condition too related back to the accident through contaminated bone graft materials.  He complained of fatigability and decreased stamina when examined by Dr. Zaremba.

Doc. 9 at 8.  Unfortunately, as stated earlier, Dr. Zaremba's findings are based

primarily on Plaintiff's subjective complaints of pain, rather than on Plaintiff's complaints of fatigue.  Moreover, Dr. Zaremba never opined that Plaintiff is disabled from fatigue.  In fact, he found the opposite because his assessment states that Plaintiff can take "care of activities of daily living," and is "limited [only] with regard to complex or more strenuous physical activity."  (R. 475).  This finding is consistent with the ALJ's finding that Plaintiff can perform light work.[5] (R. 23).  Therefore, Plaintiff has not met his burden of proving disability, and the ALJ's decision that Plaintiff's hepatitis C is not a disabling impairment is also supported by substantial evidence.

C.    *Plaintiff is not disabled based on the combination of his impairments.*

Finally, Plaintiff alleges that the ALJ erred by failing to consider Plaintiff's impairments in combination.  This contention overlooks that the ALJ determined Plaintiff's RFC by considering "all symptoms to the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929."[6]

---

[5]Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

[6]Section 416.929 is titled "How we evaluate symptoms, including pain."

(R. 23) (emphasis added).  Furthermore, the ALJ engaged in a thorough review of Plaintiff's entire medical history, (*see* R. 19-28), which suggests that he made determinations based on the combined effect of Plaintiff's severe impairments.  In any event, Plaintiff failed to cite any medical evidence in the record that supports his contention that the ALJ did not adequately consider his impairments in combination.  Therefore, Plaintiff failed to carry his burden on this issue.  Based on the record as a whole, including the ALJ's finding as related to Plaintiff's RFC, the court finds that the ALJ considered Plaintiff's impairments in combination and that the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 20th day of March, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE